No. 45,523

CLYDE C. DAVIS and BETTY J. DAVIS, husband and wife; NAOMI
DAVIS and CLYDE WESLEY DAVIS, minors, by and through their
parents and next friends, CLYDE C. DAVIS and BETTY DAVIS, *Ap-
pellees*, v. CITY OF KANSAS CITY, KANSAS, a municipal corporation,
*Appellant*, and CARL C. McCLINTIC, *Defendant*.

(464 P. 2d 154)

Opinion filed January 24, 1970.

*Joseph A. Bukaty*, Assistant City Attorney, argued the cause, and *C. W.
Brenneisen*, City Attorney, *A. B. Howard* and *Lloyd G. Alvey*, Assistant City
Attorneys, were with him on the brief for the appellant.

*James J. Lysaught*, of Kansas City, argued the cause, and *Willard L. Phil-
lips*, *P. B. McAnany*, *Thomas M. Van Cleave, Jr.*, *John J. Jurcyk, Jr.*, *Bill E.
Fabian*, *Robert E. Fabian*, *R. H. Foerschler* and *Robert D. Benham*, all of
Kansas City, were with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to recover damages for a nuisance
alleged to have been created by the city of Kansas City acting in
concert with another in the operation of a trash dump adjacent to
the plaintiffs' home. On the trial of the case the jury returned a ver-
dict in the sum of $20,000 for the plaintiffs, and the city has duly
perfected an appeal from the judgment entered thereon.

The city raises two points on appeal. It contends the trial court erred in refusing to declare a mistrial and in the giving of erroneous instructions.

Clyde C. Davis and his wife brought this action for themselves and on behalf of their two minor children (plaintiffs-appellees) alleging that for a period of at least one year immediately preceding July 30, 1964, and continuing to the date the petition was filed (November 20, 1964) the city of Kansas City, Kansas, (defendant-appellant) and Carl C. McClintic (defendant) through their agents, servants and employees carelessly and negligently allowed the city dump site to burn and emit smoke carrying noxious and offensive fumes onto and over their home; that they failed to cover refuse with dirt, thereby permitting the refuse to be scattered onto and upon their property; and that they failed to provide for proper grading and drainage. The petition further alleged:

"6) As a result of the negligence and carelessness of the defendants, their agents, servants and employees, the plaintiffs' home has been rendered unfit, unsafe and unpleasant for habitation; rats and packs of dogs have been attracted to the dump site; the foul and noxious smoke and odors have permeated the furnishings within plaintiffs' home; the health and peace of mind of plaintiffs have been endangered, and the market value of plaintiffs' property has been diminished, all to their damage in the sum of $25,000.00."

The petition further alleged the giving of the proper statutory notice of claim which the city refused to allow.

As to parties defendant the petition alleged McClintic was, at all times herein material, a contractor responsible for collecting trash within the city limits of Kansas City, and that the defendants shared the control and operation of the dump site specifically described in the petition.

The city in its answer admitted McClintic was the contractor responsible for the collection of trash within the city, but denied that it controlled or shared the control with McClintic in the maintenance, use and operation of the dump site.

McClintic, among other things, alleged the dump site at all times material was under the control of and operated by "Sanitary Disposal, Inc.," a corporation duly organized and existing under and by virtue of the laws of the state of Kansas.

The evidence discloses the plaintiffs purchased their home in 1956 at which time no dump existed near it. Several year later, in 1960 or 1961, the plaintiffs became aware that refuse and garbage were being dumped in the hollow adjacent to their home. Smoke

and ashes from fires commenced blowing across their property, and a sickening odor developed. Thereafter rats, dogs and various types of insects commenced to congregate in the vicinity of the dump and came upon the property of the plaintiffs. Fires in the dump occasionally raged out of control and burned into the plaintiffs' yard; a wooden fence and an outbuilding were damaged by such a fire.

The constant smoke and odor, and mosquitoes which bred in the stagnant pools of water in the dump, created conditions that denied the plaintiffs the enjoyment of their home, which was located in a rustic, sparsely populated area. In summer months the plaintiffs frequently left their home in order to escape these conditions.

There was testimony that the plaintiffs had made various improvements to their home at various times after its acquisition.

On the 20th day of October, 1955, the city by an agreement with Georgia B. Jenkins obtained an easement for a period of twenty years for a large parcel of land bordering the plaintiffs' home for the purpose of providing a refuse dump for the city. The terrain on this property is hilly, and the agreement provided that the city "may use said ravines as a *public dump.*" (Emphasis added.)

On the 28th day of November, 1961, the city entered into a contract with C. C. McClintic, wherein McClintic agreed to collect trash within the city limits of Kansas City, Kansas, for a period of two years beginning January 1, 1962, and ending December 31, 1963. The contract was delineated in some detail calling for the payment of $240,000 in weekly installments over a period of two years. It provided that McClintic was to transport all trash to a dump site to be furnished and operated in a lawful manner by him in strict compliance "with city, county and state laws, health regulations and zoning regulations." While the contract provided that it was McClintic's responsibility to "furnish, equip, control and finance the dump site, the dump maintenance and operation," it further provided that McClintic was to collect all trash according to a schedule prepared by the commissioner of finance, health and public property for the city; that:

"The collection of trash shall be at all times under the supervision of the Commissioner of Finance, Health and Public Property, who shall have authority to make additional rules and regulations, not inconsistent with the terms of

the contract, requiring that the business of collection of trash shall be conducted in such manner as not to endanger the public health, or be an annoyance to the inhabitants of said City."

The contract further provided that in the event of any dispute or disagreement as to the collection of trash, "the Commissioner of Finance, Health and Public Property shall be the sole judge and arbitrator of said dispute or disagreement, and his decision thereon shall be final."

The contract further provided in part:

"This contract shall include in its terms, by reference, the provisions of ordinances of Kansas City, Kansas, and the health and sanitation ordinance of the city; and shall bind the contractor to abide by the orders of the Board of Commissioners. . . .

"The Board of Commissioners shall reserve the right to, at any time after due notice and an opportunity to be heard has been given said contractor, cancel and revoke the said contract for failure to comply with its terms.

"Said Contractor or second party shall save the City harmless from any loss or damage on account of said contractor's conduct of said business and shall execute a bond to the City, to be approved by the Board of Commissioners, in the sum of $25,000, with surety by some responsible surety company, conditioned upon the faithful performance of all the terms of said contract, and save the City harmless from any loss or damage on account of said contractor's conduct of said business."

The bond given pursuant to the foregoing agreement recites:

"The condition of this obligation is such that whereas the said C. C. McClintic has entered into the contract with the City of Kansas City, Kansas, and is *duly appointed and designated City Trash Collector* for a term beginning January 1, 1962 and ending December 31, 1963, and charged with *the duty of collecting and disposing of trash* and furnishing the equipment so to do according to the provisions of Ordinance Number 39216, and amendments thereof, and a contract between the City of Kansas City, Kansas, and C. C. McClintic, dated November 28, 1961; . . ." (Emphasis added.)

It further recites:

"Now, THEREFORE, if the said principal in the collection and disposal of trash shall perform all the covenants as required in the contract dated November 28, 1961, and hold the City harmless in any and all suits, claims, losses and damages *for which the City might be liable in collecting and disposing of trash* from within the limits of the City of Kansas City, Kansas, then this obligation shall be void otherwise to remain in full force and effect." (Emphasis added.)

Thereafter on the *29th day of October, 1963,* the city entered into another contract with *C. C. McClintic* for a period of three years beginning January 1, 1964, and ending December 31, 1966,

for the collection of trash within the city limits of Kansas City, Kansas, for the sum of $360,000. This contract in all other respects was executed identical to the previous contract the city had with McClintic, and two bonds, one for the year 1964 and the other for the year 1965, were executed identical in all material respects to the previous bond.

The record discloses a resolution by the city of Kansas City (the date of which is not indicated) reciting that it "will discontinue the operation of the disposal area after December 31, 1961," and that the easement it had with Georgia B. Jenkins dated the 20th day of October, 1955, would no longer be necessary for the purposes of the city after December 31, 1961. As of that date the resolution recites the easement "is hereby released," and the city "will discontinue all operations on said area for dumping purposes." The city did, however, reserve the right until January 31, 1962, to go upon the described premises for the purpose of depositing earth over the disposal area used by the city.

There is no evidence in the record that the city ever entered upon the premises and covered earth over the disposal area.

Presumably the release of the city's easement authorized McClintic to acquire the easement, because he testified he "entered into an easement with the owners Jenkins of the area."

On the 11th day of September, 1964, the plaintiffs filed a statement of claim with the city of Kansas City pursuant to K. S. A. 12-105. Thereafter, on November 20, 1964, this action was instituted in the district court for the recovery of damages resulting from the operation of the dump.

The action proceeded to trial on the theory that a nuisance had been created and maintained by the city and McClintic acting in concert. Evidence was introduced of the conditions which existed in the dump and its vicinity from the time the plaintiffs first became aware of the conditions up to the time of trial. Although the trial court limited the recovery against the city to those damages which befell the plaintiffs during a three-month period immediately prior to September 11, 1964, evidence of conditions before and after that period was admitted as against the defendant McClintic.

At the close of the presentation of the plaintiffs' case, the plaintiffs moved to dismiss the action as to McClintic, and the trial court granted the motion. McClintic is not a party to this appeal.

The appellees indicate in their brief they filed the motion to dis-

miss McClintic because there was testimony from McClintic that he had not been conducting his business as an individual but as "All-Purpose Sanitary Disposal, Inc.," concluding thereby that McClintic personally was not a proper party.

The appellant city assigns as its first point that the trial court improperly refused to declare a mistrial at the close of the plaintiffs' evidence, and after dismissal of the action against McClintic by the plaintiffs, because voluminous testimony had been admitted over objections by the city against McClintic that was inadmissible as to the city, and that the evidence so admitted was incapable of separation by the jury from the evidence admissible as to the city.

During the presentation of the plaintiffs' case the trial court admitted voluminous testimony by the plaintiffs over objection of the city on the ground that such testimony was admissible against the defendant McClintic. This testimony covered a period of time giving rise to the nuisance from the year 1961 to the time of trial. In overruling the city's objections the court stated it would cover the matter by instructions, which it did.

The trial court specifically instructed in No. 11 as follows:

"Plaintiffs filed such a notice of their claim with the City Clerk on September 11, 1964. So here the plaintiffs can recover, if at all, from the defendant City, only for such damages to their persons or property as they establish by a preponderance of the evidence were sustained between June 11, 1964, and September 11, 1964."

By instruction No. 12 the court informed the jury the plaintiffs were required to establish by a preponderance of the evidence the following essential elements of their cause of action in order to recover against the city: (1) that the city created, maintained or permitted the nuisance to exist in the near proximity of the plaintiffs' property; and (2) that "between those dates plaintiffs sustained damages due to such nuisance."

The jury was also instructed in No. 17 to disregard the plaintiffs' claims against the defendant McClintic. In instruction No. 18 it was stated that if the jury found the plaintiffs were entitled to a verdict against the defendant city, it should consider the amount to which the plaintiffs were entitled. Furthermore, Mr. and Mrs. Davis should be allowed such amount as would fairly and adequately compensate them for the diminution in the value of their real estate during the three-month period immediately prior to September 11, 1964, if any is shown, due to a nuisance created,

maintained or permitted by the city, and for such amounts as would fairly and adequately compensate each of the four plaintiffs for their annoyance, discomfort, inconvenience and endangerment of their health and peace of mind during said period of time, and due to such nuisance. These instructions properly stated the law and are founded upon the decisions of *Steifer v. City of Kansas City,* 175 Kan. 794, 267 P. 2d 474; and *Adams v. City of Arkansas City,* 188 Kan. 391, 362 P. 2d 829.

The city argues in view of the verdict which the jury rendered in the amount of $20,000 ($10,000 for damage to real estate and $2,500 each for the plaintiffs), it is apparent the jury was unable to limit its assessment of damages to those occurring from June 11, 1964, to September 12, 1964, as required under the court's instructions; and that it was unduly influenced by the extraneous and inadmissible evidence presented against McClintic. The city argues in its brief that confining the evidence to the above ninety-day period of time, there was no substantial evidence to support the verdict. (Citing, *Newcomb v. Brettle,* 196 Kan. 560, 413 P. 2d 116; and *Curry v. Stewart,* 189 Kan. 153, 368 P. 2d 297.)

A review of the record discloses that while the plaintiffs had difficulty in pinpointing dates with respect to specific occurrences, there was no doubt from their testimony the conditions giving rise to the nuisance were a constant occurrence, and in the summer of 1964 they became so severe they sought legal advice. We have no hesitance in stating the record discloses substantial evidence to sustain the verdict against the city for permitting a nuisance to exist in the near proximity of the plaintiffs' home for the ninety-day period in question in accordance with the standards set forth in *Adams v. City of Arkansas City,* supra.

The fact that McClintic was dismissed from the case at the close of the plaintiffs' evidence was no ground for granting a mistrial, because the evidence at the time of its admission was properly received. The jury was properly instructed after the case was dismissed as to McClintic.

A similar situation was presented in *Steifer v. City of Kansas City,* supra. That action involved a claim for damages resulting from nuisance in the operation of a city dump on premises leased from Georgia B. Jenkins and her husband, the same owners as here. There the trial court over objection permitted the introduction of evidence of the conditions of the dump outside the three-

month period for the purpose of determining the nature of injunctive relief which the plaintiffs sought in addition to the damages claimed. This court said in its opinion:

". . . The court in its instructions to the jury made it clear that plaintiffs' right to recover damages was limited to a period of three months preceding the filing of their claim with the city, and defendant's contention of error in this regard is without merit." (p. 799.)

The situation here presented is contemplated in K. S. A. 60-406, which provides:

"When relevant evidence is admissible as to one party or for one purpose and is inadmissible as to other parties or for another purpose, the judge upon request shall restrict the evidence to its proper scope and instruct the jury accordingly."

On the record here presented the trial court properly followed the law in permitting the introduction of the evidence concerning which complaint is made, and it did not err in so doing, or in its refusal to declare a mistrial.

The second point urged by the appellant city for a reversal is that the trial court's instructions improperly and prejudicially stated the law with reference to the liability of a municipal corporation for the acts of an independent contractor in creating a nuisance outside the corporate limits of the municipal corporation, where the individual contractor performed the majority of the acts complained of for persons other than the municipal corporation.

The appellant city in its answer denied that it operated the dump and contends that no evidence was introduced to show that the city improperly operated or controlled the dump after December 31, 1961. The appellant argues McClintic or the All-Purpose Sanitary Disposal Company operated the dump as a private commercial enterprise from the contract for trash collection with the city; that McClintic did dispose of city trash at the dump prior to September 15, 1963, but the city trash consisted of less than twenty percent of the trash handled at the dump. The appellant argues it did not hire or contract with McClintic or the All-Purpose Sanitary Disposal Company to maintain this dump; and that no city trash was disposed of at the dump in question within ninety days prior to the filing of the plaintiffs' claim with the city.

McClintic testified in the trial of the case that he was run off

the premises at the dump site by the owners in September, 1963, and that the "All-Purpose Sanitary Disposal, Inc." was formed as a corporation after 1962, although he did not remember the exact date.

It is to be noted from the contracts introduced in evidence and the bonds given pursuant thereto that the city was dealing only with C. C. McClintic, never with the All-Purpose Sanitary Disposal, Inc. In fact, the city was still dealing with C. C. McClintic in the bond given *for the calendar year 1965* which the city approved. The second contract McClintic entered into with the city was dated October 29, 1963, more than one month after McClintic claims he was run off the premises of the dump site in question.

The plaintiffs' evidence disclosed the nuisance created by the conditions at the dump was most severe during the ninety-day period for which the jury awarded damages.

Under the circumstances presented by the record the jury was entitled to discredit such of the testimony as it disbelieved.

The city takes the position it was insulated from liability by the contract it had with McClintic. It relies on *Reilly v. Highman,* 185 Kan. 537, 345 P. 2d 652, and cases cited therein, for the general rule that where the relationship of employer and independent contractor (contractee and contractor) exists, the employer is not liable for the negligence of the contractor in the performance of the work.

There are, however, well established exceptions to the foregoing rule. One of these exceptions is that the employer is liable where the employer retains the right to exercise authority as to the manner and method in which the work shall be performed by the contractor. (*Railroad Co. v. Madden,* 77 Kan. 80, 93 Pac. 586; and see *Henderson v. Sutton's Food City,* 191 Kan. 145, 379 P. 2d 300.)

We hasten to add the gravamen of the offense in actions of this nature is not necessarily negligence but nuisance, and is dealt with by the law of nuisance, whether the nuisance is negligently caused or otherwise. (*Adams v. City of Arkansas City,* 188 Kan. 391, 400, 362 P. 2d 829.)

The exception heretofore noted also obtains where a nuisance has been created. In other words, where the conduct of the contractor gives rise to a nuisance and the employer retains the right

to control the manner and method of the contractor's performance of the contract, the employer is liable for the nuisance.

Here the city by its contract retained control of McClintic by specific provisions in the contract, whereby it retained the right to control both the collection and disposal of the trash from the city. This is indicated by the city's own construction of its contract with McClintic as reflected by the provisions of the bond which it required of McClintic to save the city harmless "in any and all suits, claims, losses and damages for which the City might be liable in collecting and disposing of trash from within the limits of the City." The city, having retained the right to control McClintic in the disposal of trash from within the limits of the city, cannot now assert that it is immune from liability because McClintic was an independent contractor.

The primary instruction concerning which the city complains is instruction No. 9. It reads:

"By reason of the nature of trash collection, handling and disposal, a municipal corporation cannot escape its duty by contracting it away, and if in fact a nuisance existed in close proximity to plaintiffs' property, and this nuisance was due to the improper and careless handling of the trash and rubbish by defendant McClintic, or others, to plaintiffs' damage, then the City is here liable as if McClintic was not in the picture and as if the disposal site was in fact being operated directly by City employees."

Whether the nature of trash collection and disposal is such that a municipal corporation cannot escape its duty by contracting it away, is a point we are not called upon in this case to decide. (See K. S. A. 12-2102; and *Steifer v. City of Kansas City,* supra.) Here the city by retaining control over the disposal of trash did not contract away its obligation, and the variance indicated by the instruction and the facts was not prejudicial to the city.

The appellant argues not only does the instruction make the city liable for the improper disposal of trash by McClintic, but also for the improper disposal of trash by "others."

McClintic testified that only fifteen or twenty percent of all the trash disposed of at the dump in question constituted trash collected in accordance with his contract with the city. He testified that he serviced industries, Wyandotte County citizens, Johnson County citizens and other individuals at the dump.

While the record on this point is not all that it should be, the foregoing testimony is misleading. In the first place, it was argued before this court that the only trash McClintic was re-

quired to collect under the contract with the city was the trash which he picked up from residential properties within the city limits of Kansas City, Kansas. It was further disclosed that a much greater portion of the trash came from industrial enterprises and commercial businesses within the city limits of Kansas City, Kansas. This trash was not covered by McClintic's contract with the city. Nevertheless, the trash did arise from within the city limits of Kansas City and went, presumably under private contract, to the dump in question. For this reason, the trial court in its instruction No. 9 used the expression "McClintic, or others."

Nowhere in the record has the city attempted to follow up the testimony of McClintic to show the extent of trash disposed of at the dump by Johnson County citizens or Wyandotte County citizens, nor is there any indication that the Wyandotte County citizens lived outside the limits of the city of Kansas City.

It is incumbent upon the appellant to make it affirmatively appear from the record that the trial court committed reversible error. In this the appellant has failed.

Other instructions given by the trial court over objection of the city at the trial are not argued or asserted on appeal for a reversal of the judgment.

While this opinion should not be construed as approving instruction No. 9, as heretofore quoted, we cannot say from the record presented the appellant was prejudiced by the giving of instruction No. 9. We find no reversible error.

The judgment of the lower court is affirmed.