**Lauri E. MADDY and Michael E. Maddy, Plaintiffs,**

v.

**VULCAN MATERIALS COMPANY, Defendant.**

No. 86–1636–K.

United States District Court, D. Kansas.

May 25, 1990.

Craig Shultz, of Shultz & Webb, Wichita, Kan., for plaintiffs.

David B. Bartel, Frank J. Daily, James Lucke, Ralph A. Weber, Michael L. Zaleski, of Quarles & Brady, Milwaukee, Wis., Alexander B. Mitchell, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Originally, the court was presented with motions for summary judgment on a wide variety of issues, filed on behalf of the 31 plaintiffs and defendant Vulcan Materials Company. Since that time, the "Fahnholz plaintiffs," a group representing all but two of the plaintiffs, have reached a settlement agreement with the defendant and have dismissed with prejudice their claims against Vulcan. The remaining plaintiffs, Lauri and Michael Maddy, assert claims against Vulcan alleging trespass, nuisance, and absolute liability.

A number of the summary judgment motions are relevant only to the claims of the Fahnholz plaintiffs, and are therefore moot as a consequence of the dismissal of those claims. These motions include Vulcan's separate summary judgment motions on: (1) the groundwater contamination claims asserted by eight of the Fahnholz plaintiffs, (2) the past and present illness claims of the Fahnholz plaintiffs, and (3) the claims of the Fahnholz plaintiffs for future medical monitoring and surveillance.

There remain for resolution by the court three summary judgment motions of Vulcan, and one summary judgment motion filed by the Maddys. Arguments relating to these motions were presented to the court at a hearing held May 18, 1990. Consistent with the statements of the court at that time, and for the reasons discussed herein, the motions for summary judgment of defendant Vulcan are hereby granted. The summary judgment motion of the Maddys relating to comparative fault is granted as to the claim for nuisance, but denied in all other respects.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hos-*

*pital,* 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R. Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Personal Injury

Plaintiff Michael Maddy makes no claim for personal injury. Lauri Maddy, however, contends that exposure to chemicals emitted by Vulcan caused her to suffer, or exacerbated existing, respiratory ailments. Reviewing all the evidence in the light most favorable to plaintiff Lauri Maddy, there is insufficient evidence to support her claim for personal injury, and Vulcan's summary

judgment motion on that issue should be granted.

Lauri Maddy has identified only one medical expert in support of her personal injury claim, Dr. Stephen M. Polland. Dr. Polland is an osteopath specializing in pulmonary medicine. He initially treated Maddy for a respiratory ailment in November, 1984, and remains her primary treating physician.

In his deposition, Dr. Polland repeatedly denied any particular expertise in determining whether exposure to chemicals caused or contributed to Maddy's respiratory problems. When asked if he could testify that chemicals caused or exacerbated Maddy's injuries, Dr. Polland responded, "I am not here to speak as an expert on toxic fumes, gases or similar substances as a cause of lung disease, no. I am not an expert in that area." (Polland Depo., pp. 23–24.) Later in the deposition, Dr. Polland again disavowed any status as an expert on the subject, and stated that he did "not have the background to made a determination as to what the etiology of her underlying lung disease was." (Polland Depo., p. 49.)

Dr. Polland also repeatedly denied holding any opinion, within a reasonable degree of medical probability, as to whether exposure to chemicals caused or contributed to Maddy's respiratory problems. Dr. Polland stated that he did not know the cause of Maddy's underlying respiratory condition. On several instances during the deposition, Dr. Polland stated that he was not able to testify, to a reasonable degree of medical certainty, that exposure to chemicals in the environment aggravated Maddy's underlying condition.

Q. And it's still your position that you can't say what really caused her exacerbation?

A. I can't, from what we have talked about to this point, tell you that the chemicals caused her condition, no.

Q. Okay. And you also can't say that the chemicals, in fact, did cause her exacerbation?

A. Well, I'm concerned that they may have.

Q. But you can't, Doctor, can you, to a reasonable degree of medical and scientific certainty, say, you know, yes, that chemicals did, in fact, cause her exacerbation? As we said earlier, you just don't have enough information to say that?

A. At this point I don't have enough information, that's correct.

(Polland Depo., pp. 99–100.)

Dr. Polland also testified that Maddy's smoking, her proximity to farm animals, or her living in an old farm house with a cistern and an old heating system could have caused an aggravation of her respiratory problems. "I think another way to say that," Dr. Polland testified, "would be to say I don't know what caused her underlying lung condition. But that her condition appeared to be aggravated by living on the farm." (Polland Depo., p. 79.)

Lauri Maddy has also consulted Dr. Howard D. Waite, seeking his opinion as to whether chemicals emitted by Vulcan contributed to her respiratory problems. Dr. Waite is a board-certified pulmonary disease specialist, and practices at the National Jewish Hospital in Denver, Colorado. When she saw Dr. Waite, Maddy gave him a list of chemicals she believes are being emitted by Vulcan, and lists of chemicals allegedly produced by other manufacturers.

Dr. Waite testified that he found no relationship between the chemicals allegedly emitted and Maddy's respiratory condition. Dr. Waite testified that in his opinion the alleged chemical exposure neither caused nor exacerbated Maddy's respiratory condition. Dr. Waite was unable to identify any possible mechanism from which he could relate chemical exposure to her illness. He also testified that before a chemical could exacerbate Maddy's condition, it would have to be a respiratory irritant and that none of the volatile organic compounds allegedly emitted from Vulcan were respiratory irritants. According to Dr. Waite, it is more likely than not that Maddy's respiratory condition was caused by a virus.

■ In response to Vulcan's motion for summary judgment, Maddy initially moved

to strike the motion, contending that the motion was untimely. Maddy argued that the deposition of Dr. Polland had not been completed, and she therefore had "absolutely no opportunity to question or examine" Polland as to causation. (Motion to Strike, at 1.) The motion to strike is utterly without merit. Dr. Polland is Maddy's witness. There is no indication that Maddy was prevented from contacting Polland and obtaining his opinion. And, indeed, Maddy relies on an affidavit of Dr. Polland in her response to Vulcan's motion for summary judgment. The motion to strike is therefore denied.

Following her motion to strike, Maddy responded to Vulcan's summary judgment motion. This response admits all but one of the contentions of fact raised by Vulcan, denying that Dr. Polland was unable to conclude that chemical exposure caused or contributed to Maddy's illness. This denial is based upon the affidavit of Dr. Polland. No other evidence is offered in support of the response. Dr. Polland's one-page affidavit offers the following conclusion:

Based upon the history and description of onset of Lauri's respiratory problems and exacerbation of such problems, it is my opinion to a reasonable degree of medical probability, that her condition has been exacerbated by exposure to chemicals which are, upon description of said chemicals, emitted or produced by Vulcan Chemical Company.

■ This opinion, of course, completely contradicts Dr. Polland's statements during his deposition. Under the Federal Rules of Civil Procedure, a party opposing a motion for summary judgment may not attempt to create a sham fact issue to defeat the motion through the submission of affidavits which conflict with earlier sworn statements. *See Lovejoy Electronics v. O'Berto*, 873 F.2d 1001 (7th Cir.1989); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453 (6th Cir.1986); *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.1986); *Foster v. Arcata Associates*, 772 F.2d 1453, 1462 (9th Cir.1985), *cert. denied*, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986); *Camfield Tires, Inc. v. Michelin Tire Corp.*,

719 F.2d 1361, 1364 (8th Cir.1983); *Perma Research & Development v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969); *Howard v. Malcolm*, 658 F.Supp. 423 (E.D.N.C.1987). In *Franks*, the Tenth Circuit identified several factors relevant to the determination of whether an affidavit in conflict with earlier sworn testimony should be excluded as an attempt to create a sham fact issue, including

whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.

796 F.2d at 1237 (citations omitted).

■ Applied to the present case, these factors support the conclusion that Dr. Polland's affidavit should be disregarded. While the opportunity for cross-examination of Dr. Polland during his earlier deposition may have been limited, his testimony during that deposition is clear and unequivocal. There is no indication of confusion or ambiguity in Dr. Polland's answers during the deposition. The affidavit submitted by Dr. Polland contains no attempt to explain his previous answers; indeed, the affidavit makes no reference at all to his deposition. *See Franks*, 796 F.2d at 1237. There is no indication that the opinion contained in the affidavit is based on newly-discovered evidence, or that Dr. Polland lacked access to relevant evidence at the time of his deposition. Instead, the affidavit contains a single, conclusory opinion which directly contradicts the affiant's prior and unambiguous sworn testimony.

Therefore, the affidavit will be disregarded as an impermissible attempt to create a sham fact issue. Since Maddy offers no other evidence which would indicate that her respiratory problems were caused or aggravated by exposure to chemicals produced by Vulcan, the lack of causation becomes an undisputed fact and summary judgment will be granted on behalf of defendant Vulcan.

Moreover, even if the affidavit of Dr. Polland were to be considered, summary judgment would still be warranted. In his affidavit, Dr. Polland merely recites his conclusion that exposure to chemicals was a causal factor in Maddy's illness. There is no attempt to contradict Dr. Polland's prior testimony that he is not an expert on the subject.

Dr. Polland repeatedly stated during his deposition that he has no expertise in the area. He was unable to identify any medical literature to support the conclusion that chemicals allegedly emitted by Vulcan had caused or aggravated Maddy's respiratory problem, nor was he able to point to any personal experience which would support such a conclusion.

In *Johnston v. United States*, 597 F.Supp. 374, 401 (D.Kan.1984), this court held that a party seeking the admission of expert witness opinion testimony must demonstrate both the qualifications of the witness to address the subject, and "some reliable factual basis on which the opinions are premised." Under Fed.R.Evid. 703, the facts or data used by an expert in reaching an opinion must be "of a type reasonably relied upon by experts in the particular field forming opinions or inferences upon the subject."

 Expert opinion testimony must be grounded on reliable data, particularly in establishing causation in product liability and toxic tort actions. *See In re Agent Orange Product Liability Litig.*, 611 F.Supp. 1223, 1248–1250, 1261–1263 (D.C. N.Y.1985), *aff'd*, 818 F.2d 187 (2d Cir.1987), *cert. denied*, 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988). In *Viterbo v. Dow Chemical Co.*, 646 F.Supp. 1420, 1424 (E.D. Tex.1986), *aff'd*, 826 F.2d 420 (5th Cir. 1987), the court noted that a "rigorous examination" of whether the data underlying an expert's opinion meets the standards of Rule 703 "is especially important in the toxic tort context, where presentation to the trier of theories of causation depends almost entirely upon expert testimony."

 In the present case, it is undisputed that Dr. Polland has no special skill or expertise in determining the health effects of toxic chemical exposure. Dr. Polland admits he is not an expert on the subject. Moreover, the opinion contained in Dr. Polland's affidavit lacks any reliable factual basis. During his deposition, Dr. Polland was completely unable to identify any medical literature, scientific publications, or personal experience which would support a conclusion that Maddy's respiratory illness was caused or aggravated by exposure to chemicals allegedly emitted by Vulcan. Dr. Polland was unable to isolate other potential causes of Maddy's respiratory illness, admitting that her illness may have been due to her smoking or to other environmental factors. The only expert evidence before the court is the testimony of Dr. Waite, who testified that the chemicals allegedly emitted by Vulcan could not be associated with Maddy's respiratory problems.

And finally, Maddy presented no scientific or expert evidence that she was in fact exposed to these chemicals. Dr. Polland admits in his deposition that he assumed, for purposes of his diagnosis and treatment of Lauri Maddy, that her representations of exposure to the certain chemicals were correct. Dr. Polland made no independent attempt to verify the existence of the exposure. In cases claiming personal injury from exposure to toxic substances, it is essential that the plaintiff demonstrate that she was, in fact, exposed to harmful levels of such substances. *Celotex Corp. v. Catrett*, 477 U.S. 317, 319–20, 106 S.Ct. 2548, 2550–51, 91 L.Ed.2d 265 (1986); *Davis v. DuPont*, 729 F.Supp. 652, 655 (E.D.Ark.1989). In the present case there is no scientific evidence indicating the level or duration of Maddy's exposure to specific toxins.

The record before the court is devoid of any evidence indicating either that Lauri Maddy was exposed to toxic chemicals emitted by Vulcan, or that such exposure caused or contributed to any physical injury. Accordingly, the court grants Vulcan summary judgment on the personal injury claims of Lauri Maddy.

## Emotional Damages

Vulcan has filed a separate motion for summary judgment relating to the plaintiffs' claims for emotional distress. Vulcan contends that the plaintiffs have failed to provide evidence sufficient to support their emotional distress claims. The facts relating to the emotional distress claims are essentially uncontested.

Lauri Maddy describes the physical symptoms of her claimed emotional distress as being "real-keyed up, nervous, anxious-type feeling, headaches." She describes no other physical symptoms. After the institution of the present lawsuit, she consulted a health care professional for treatment of her emotional distress. However, no medical person has ever told her that her respiratory conditions were caused by exposure to chemicals, but she is firmly convinced that this is true. She has stated that other activities in her life such as her role as an environmentalist cause her emotional distress as well.

Michael Maddy describes no physical manifestations of his claimed emotional distress. He says that it affects his stress level, but he has never seen a psychiatrist or psychologist for treatment of his emotional distress. He has never missed any work because of his distress, nor does it interfere with his day-to-day activities. No one, other than his wife, has ever told him that he has been exposed to unsafe levels of any chemicals. He says that his wife's illness and fear of the future cause his distress.

■ As a general rule, Kansas law prohibits recovery for emotional distress in tort actions, unless the emotional distress is accompanied by a physical injury. *Anderson v. Scheffler*, 242 Kan. 857, 752 P.2d 667 (1988); *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 662 P.2d 1214 (1983). In response, Michael and Lauri Maddy argue that this rule is applicable only in negligence actions and does not apply to the intentional tort theories, including trespass, public nuisance, and private nuisance, which they raise against Vulcan.

The general rule precluding recovery for emotional distress in the absence of accompanying physical injuries is grounded on the need to prevent fraudulent or exaggerated claims. This rationale was noted by the Kansas Supreme Court in *Hoard*:

"The temporary emotion of fright, so far from serious that it does no physical harm, is so evanescent a thing, so easily counterfeited, and usually so trivial, that the courts have been quite unwilling to protect the plaintiff against mere negligence, where the elements of extreme outrage and moral blame which have had such weight in the case of the intentional tort are lacking."

233 Kan. at 274, 662 P.2d 1214 (quoting PROSSER, LAW OF TORTS § 54 at 329.)

■ The Maddys contend that the general rule does not apply since one of their claims against Vulcan involves trespass, an intentional tort. In addition, although they do not make the argument in their brief, the Maddys suggested in oral argument that it is not necessary to demonstrate an accompanying physical injury, since the claims against Vulcan include charges of reckless and wanton conduct. This latter argument is similar to one made by the Fahnholz plaintiffs, relying on *Bowman v. Doherty*, 235 Kan. 870, 876, 686 P.2d 112 (1984), where the court concluded:

The general rule is not applicable in cases of a wrong where the act is wanton or willful or where the act is committed with malice and intended to cause mental distress. Some of the exceptions to the general rule requiring contemporaneous bodily injury include assault, illegal arrest, malicious prosecution, false imprisonment, seduction and slander.

The Fahnholz plaintiffs contended that under the rule in *Bowman*, it is not necessary to demonstrate accompanying physical injuries, since their complaints included claims of wanton and reckless conduct by Vulcan.

The court's conclusions in *Bowman*, however, cannot be read so expansively. Both preceding and subsequent decisions of the Supreme Court require a limited application of the rule in *Bowman*. The *Bowman* court cited the earlier statement

of Chief Justice Schroeder that damages for emotional injuries without accompanying physical damages could be recovered "where the injurious conduct is willful *or* wanton, *or* the defendant acts with intent to injure." *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 662 P.2d 1214 (1983) (emphasis added). But other Kansas cases have taken a more limited view of the exception to the general rule, including *Lantz v. City of Lawrence*, 232 Kan. 492, 657 P.2d 539 (1983), which was cited in support of the above-quoted statement in *Hoard*. In *Lantz*, also authored by Chief Justice Schroeder, the court concluded that "Kansas case law permits recovery of damages for mental distress without physical injury in cases where the injurious conduct is willful *and* wanton *and* the defendant acts with intent to injure." 232 Kan. at 500, 657 P.2d 539 (emphasis added). The court repeated this usage of the conjunctive form of the rule in its remand to the district court, with instructions that "appellants may recover damages for mental distress in the absence of personal physical injury if . . . they prove the defendants acted willfully, wantonly *and with an intent to injure*." *Id.*, at 501, 657 P.2d 539 (emphasis added).

The apparent conflict in these decisions may be laid to rest upon a closer review of the Kansas cases addressing the subject. And this review does not support an approach which would permit the circumvention of the general rule relating to emotional distress by the expedient of recharacterizing traditional tort or product liability actions as actions for trespass or for reckless or wanton conduct.

First, the view that a plaintiff may recover emotional damages without proof of accompanying physical damage, so long as he alleges wanton conduct by the defendant, is contradicted by the holding of the court in *Hopkins v. State*, 237 Kan. 601, 702 P.2d 311 (1985). In *Hopkins*, the plaintiffs brought an action for damages against several law enforcement officers and agencies, after the officers had apprehended an intruder in the plaintiffs' mobile home. The officers had flushed out the intruder through their use of "numerous discharges

of tear gas [and] a hail of bullets." 237 Kan. at 603, 702 P.2d 311. The trial court found the defendants immune under the Kansas Tort Claims Act.

On appeal, the Supreme Court reversed in part, and affirmed in part, the decision of the trial court. The *Hopkins* court reversed the trial court's award of summary judgment on the basis of governmental immunity, finding that the plaintiffs had provided sufficient evidence of wanton conduct by the defendants. Because the plaintiffs had provided proof of wanton conduct, the trial court's grant of summary judgment on the basis of the Tort Claims Act was improper. The Supreme Court remanded the case to permit the plaintiffs to continue the action for recovery for the property damage to their home. 237 Kan. at 612, 702 P.2d 311.

However, the court also affirmed the trial court's award of summary judgment against the plaintiffs' claims of mental distress. The plaintiffs had experienced no physical injuries, but sought recovery for mental distress and "physical distress in the form of insomnia, headaches, weight gain and general physical upset." *Id.* The Supreme Court held that the general rule stated in *Hoard* was controlling in the matter before it: "there can be no recovery for emotional distress suffered by a plaintiff unless it is accompanied by or results from physical injury to the plaintiff, . . ." *Id.*, at 612–613, 702 P.2d 311. The court thus applied the general rule requiring physical injury, even though it had previously found that the plaintiffs had provided sufficient proof of wanton conduct to avoid a motion for summary judgment. The court's holding in *Hopkins* is explicable only if understood as a rejection of the argument advanced here, that general allegations of recklessness are sufficient to do away with the general rule requiring accompanying physical injury.

■ Reconciliation of the decision in *Bowman* with other Kansas cases requires a narrow construction of the former. The result of *Bowman* is tied to, and limited by, the facts present in that case. Central to

the court's conclusion in *Bowman* was the court's finding that "[o]ne being negligently deprived of his freedom suffers an injury which could cause mental distress." 235 Kan. at 877, 686 P.2d 112. The deprivation of freedom is sufficiently grievous to permit the recovery of damages for mental distress, since the deprivation provides a direct and logical source of distress. Further, like an accompanying physical injury, its existence provides a concrete and provable event, a touchstone which serves to minimize the possibility that the claimed distress is fraudulent, feigned, or exaggerated.

Kansas courts have permitted the recovery of damages for emotional distress in the absence of physical injuries in three general types of cases. First, recovery has been allowed when the defendant has committed an intentional tort. *See Bowman v. Doherty,* 235 Kan. 870, 686 P.2d 112 (1984) (false imprisonment); *Monroe v. Darr,* 221 Kan. 281, 559 P.2d 322 (1977) (invasion of privacy); *Dawson v. Associate Financial Services,* 215 Kan. 814, 529 P.2d 104 (1974) (tort of outrage); *William Small & Co. v. Lonergan,* 81 Kan. 48, 54, 105 P. 27 (1909) ("assault of an aggravated character"). Second, recovery has been permitted for emotional harm due to the negligent mishandling of a corpse of a close relative. *Hamilton v. Individual Mausoleum Co.,* 149 Kan. 216, 86 P.2d 501 (1939); *Alderman v. Ford,* 146 Kan. 698, 72 P.2d 981 (1937). Third, recovery has been allowed for emotional harm due to the accidental ingestion of repellant or nauseating substances. *Connell v. Norton Coca–Cola Bottling Co.,* 187 Kan. 393, 357 P.2d 804 (1960) (decomposed centipede in bottle of Coca Cola); *Cernes v. Pittsburg Coca Cola Bottling,* 183 Kan. 758, 332 P.2d 258 (1958) (slimy substance in bottle of Coca Cola).

Each of these cases shares (at least) one of two characteristics which justify the departure from the general rule relating to damages for emotional distress. In cases where the defendant has acted to intentionally inflict injury on the plaintiff (such as the tort of outrage or invasion of privacy), the moral blameworthiness associated with the defendant's conduct warrants the imposition of responsibility for emotional damages arising from the injury.

In the remaining cases, the plaintiffs' experiences (whether inflicted by the defendants intentionally, recklessly, or negligently) were of such a nature as to naturally and inherently cause emotional distress. In these cases, the probability of emotional distress due to the special type of injury suffered by the plaintiff minimizes the chance that the claim of emotional distress is asserted fraudulently. The cases are thus unlike traditional tort cases, in which emotional distress is " 'so easily counterfeited, and usually so trivial.' " *Hoard,* 233 Kan. at 274, 662 P.2d 1214 (quoting PROSSER, LAW OF TORTS § 54 at 329).

In this latter group of cases, the plaintiffs were permitted to recover damages for emotional distress without accompanying physical injury only after a judicial finding that the acts of the defendants created an increased likelihood that the plaintiffs would suffer resulting emotional distress. Thus, in *Bowman,* recovery was allowed after the court explicitly found that "[o]ne being negligently deprived of his freedom suffers an injury which could cause mental distress." 235 Kan. at 877, 686 P.2d 112. And in *Lonergan,* where the plaintiff was subjected to a physical assault by the defendant, the court also indicated the special likelihood of emotional distress:

> This was a direct invasion of the plaintiff's right of personal security. There was inchoate violence, the insult, and the implied charge that [the plaintiff] was a shoplifter. It has been said that "the right to one's person may be said to be a right of complete immunity: to be let alone...." The assault of itself gave the plaintiff a right of action against the wrongdoer, and the authorities are all agreed that whenever the attack or invasion of personal security is of such a character as to give a right of action against the wrongdoer the injured person may recover for the mental suffering which is a consequence of the wrong.

81 Kan. at 54–55, 105 P. 27 (quoting 1 COOLEY, TORTS (3d) at 33). *See also*

*Alderman v. Ford*, 146 Kan. at 702–03, 72 P.2d 981 (discussing *Lonergan* ).

In the present case, the wrongs allegedly experienced by the Maddys are similar to those experienced in the typical personal injury action. There is no evidence of an intent to injure by the defendant. Nor are the injuries allegedly suffered by the plaintiffs of such a nature as to inherently produce emotional distress, which could justify a departure from the general rule requiring proof of accompanying physical injuries. The plaintiffs' claims for trespass and reckless conduct do not justify a departure from the general rule in the present matter. As a result, the plaintiffs may not recover for their alleged emotional distress in the absence of physical injury.

A remaining question is whether the plaintiffs are entitled to escape the general rule because they have asserted claims for public and private nuisance. The Maddys assert that the general rule has no application in cases of nuisance. However, they make no attempt to provide any support for their position either with argument or citation to Kansas law.

The one case which might be taken as support for the Maddys' assertion is *Davis v. City of Kansas City*, 204 Kan. 524, 530, 464 P.2d 154 (1970), a private nuisance action in which the Supreme Court approved instructions which had been given by the trial court that the plaintiffs were entitled to recover as damages

> such amounts as would fairly and adequately compensate each of the four plaintiffs for their annoyance, discomfort, inconvenience and endangerment of their health and peace of mind during said time, and due to such nuisance.

In *Davis*, however, the injuries suffered by the plaintiffs were of such a nature as to minimize the likelihood of fraudulent or exaggerated claims, thereby justifying a departure from the general rule. The case is thus similar to those negligence cases which have permitted an exception to the general rule due to the inherently disturbing nature of the plaintiff's injuries, such as *Connell*, 187 Kan. at 393, 357 P.2d 804, where the plaintiff accidentally ingested a partially decomposed insect contained in a soft drink bottle, or *Alderman*, 146 Kan. at 698, 72 P.2d 981, where the defendants performed an unauthorized autopsy on the body of the plaintiff's husband.

In *Davis*, the plaintiffs had been subjected to significant and continuous injuries due to the maintenance of a trash dump next to their home. The court found that

> the plaintiffs purchased their home in 1956 at which time no dump existed near it. Several year [sic] later, in 1960 or 1961, the plaintiffs became aware that refuse and garbage were being dumped in the hollow adjacent to their home. Smoke and ashes from fires commenced blowing across their property, and a sickening odor developed. Thereafter rats, dogs and various types of insects commenced to congregate in the vicinity of the dump and came upon the property of the plaintiffs. Fires in the dump occasionally raged out of control and burned into the plaintiffs' yard; a wooden fence and an outbuilding were damaged by such a fire.
>
> The constant smoke and odor, and mosquitoes which bred in the stagnant pools of water in the dump, created conditions that denied the plaintiffs the enjoyment of their home, which was located in a rustic, sparsely populated area. In summer months the plaintiffs frequently left their home in order to escape these conditions.

204 Kan. 525–26, 464 P.2d 154.

In the present case, there has been no proof submitted to the court indicating that the plaintiffs were subjected to plagues of vermin, noxious or sickening odors, or blowing smoke or ashes. Instead, the plaintiffs' response to the motion for summary judgment only makes a general reference to an infringement of "the plaintiff's [sic] property rights." (Pltfs.' Brief, at 3.) The plaintiffs' alleged emotional distress, which primarily takes the form of a "fear of the future," arises as an indirect response to the exposure to chemicals allegedly emitted by Vulcan. The plaintiffs, however, have not provided proof of expo-

sure to harmful levels of toxic chemicals produced by Vulcan, nor have they demonstrated that their emotional fears and concerns on the subject are reasonable reactions to the alleged exposure and that those fears are based on objectively verifiable and reliable medical information related to that exposure.

The Kansas Supreme Court, however, has explicitly held that injury to property alone—even if committed willfully or with "positive malice or ill will"—will not itself permit recovery for emotional distress in the absence of physical injury. *Hopkins*, 237 Kan. at 613, 702 P.2d 311. In nuisance actions such as *Davis*, recovery for inconvenience and annoyance is permissible because the mental sufferings of the plaintiffs can be seen as arising directly and naturally from the misuse of neighboring property. *See also Steifer v. City of Kansas City*, 175 Kan. 794, 798, 267 P.2d 474 (1954) (neighboring dump created foul stench which "permeated and surrounded" the plaintiffs residence, clothing, and personal articles, causing loss of appetite, sleep, and "ridicule and pity among their friends and associates"). Because the plaintiffs in the present case have failed to prove any reasonable and natural connection between the alleged exposure and the resulting emotional distress, the general rule barring recovery for emotional distress without accompanying physical injury is applicable, and summary judgment is warranted.

The final argument advanced by the plaintiffs in their brief is that summary judgment should be denied because the emotional distress suffered by the plaintiffs is accompanied by physical injuries. The plaintiffs, citing "respiratory aggravation," argue that the general rule denying emotional distress in the absence of physical injury is simply inapplicable. Of course, this argument would relate solely to plaintiff Lauri Maddy and would not bar summary judgment against the emotional distress claims of Michael Maddy, since it is admitted that he has suffered from no physical injuries.

But the argument must also be rejected as to plaintiff Lauri Maddy. As discussed earlier, there is no evidence that Lauri Maddy's respiratory problems were caused or aggravated by exposure to chemicals emitted by Vulcan. The remaining complaints of Lauri Maddy, headaches and anxiety, do not constitute "physical injury" as that term is used in the general rule that recovery for emotional distress must be accompanied by physical injury. *See Hopkins v. State*, 237 Kan. at 612, 702 P.2d 311 (concluding that the general rule barred recovery for plaintiffs suffering from "insomnia, headaches, weight gain and general physical upset"). In *Anderson v. Scheffler*, 242 Kan. at 860, 752 P.2d 667, the court held that the general rule required "an actual physical injury to the plaintiff." Citing *Hopkins*, the *Anderson* court concluded that "[g]eneralized physical symptoms of emotional distress such as headaches and insomnia are insufficient to state a cause of action." *Id.*

*Trespass*

As discussed above, summary judgment should be granted against the Maddys' claims for personal injury and mental distress. The Maddys make no claim for injunctive relief or for continued medical monitoring. However, a portion of the pretrial order may be read as a claim for property damage by the Maddys. The resolution of the summary judgment motions relating to physical injury and mental distress generally would close out most of the issues presented in the case, but the claim for economic damages arising from economic damage to the Maddys' residence would survive.

Nowhere in the pretrial order do the Maddys explicitly allege that the actions of Vulcan resulted in economic damage to the value of their home or property. However, as a part of the statement of their claimed injuries and losses, the Maddys state in the pretrial order that the "[p]laintiffs were forced to move from their residence and sustained additional loss in the sale of the property." This may be read as a claim for economic damages arising from a diminution of the market value of their property

and for consequential damages arising from the move.

Two further motions for summary judgment will therefore need to be considered. First, Vulcan has moved for summary judgment against the trespass asserted against it. The Maddys have never responded to this motion. Second, prior to the dismissal of their claims, the Fahnholz plaintiffs moved for summary judgment (which the Maddys subsequently joined) against Vulcan's comparative fault defense. As discussed below, both of these motions must be resolved in favor of Vulcan. But a portion of the case will remain open: whether, through the creation of a nuisance by Vulcan or by its participation in an ultra-hazardous activity, the Maddys suffered economic losses in connection with their former residence.

In its motion, Vulcan first argues that no trespass occurred under traditional rules relating to trespass, since there was no tangible interference with the plaintiffs' property. Even under modern rules permitting the maintenance of trespass actions based upon the passage of airborne contaminants, Vulcan argues, the plaintiffs are not entitled to recover because the plaintiffs suffered no physical damage to their property. After reviewing the evidence presented in connection with the present motion, the court concludes that Vulcan's motion for summary judgment on the issue of trespass must be granted.

The Maddys never allege the existence of physical damage to the property. Read in its most favorable light, the pretrial order asserts at best a claim by the Maddys for the costs of moving and the diminution of the value of their property. Under the traditional rules relating to trespass, a defendant's actions must cause an invasion of the plaintiff's property by some tangible matter. PROSSER & KEETON, TORTS § 13, at 70–71 (5th ed.1984). *See Ryan v. City of Emmetsburg,* 232 Iowa 600, 4 N.W.2d 435 (1942); *Thackery v. Union Portland Cement Co.,* 64 Utah 437, 231 P. 813 (1924). This is true because only a tangible invasion can create the sort of interference with a plaintiff's possessory interest which trespass is intended to prevent. Thus

> the mere intentional introduction onto the land of another of smoke, gas, noise, and the like, without reference to the amount thereof or other factors that are considered in connection with a private nuisance, is not actionable as a trespass. The historical requirement of an entry or a use that interferes with possession is one that is necessary, unless the very questionable position is taken that one ought to be able to use another's property without permission so long as the use does not harm the property or interfere with the owner's use.

PROSSER & KEETON, TORTS § 13, at 71.

However, a modern trend has emerged under which airborne pollution may constitute a trespass, where the plaintiff can demonstrate physical damage to his property. *Bradley v. American Smelting & Refining Co.,* 104 Wash.2d 677, 709 P.2d 782 (1985); *Wilson v. Interlake Steel Co.,* 32 Cal.3d 229, 185 Cal.Rptr. 280, 649 P.2d 922 (1982); *Born v. Exxon Corp.,* 388 So.2d 933 (Ala.1980); *Borland v. Sanders Lead Co.,* 369 So.2d 523 (Ala.1979). *See* Annotation, *Recovery in Trespass for Injury to Land caused by Airborne Pollutants,* 2 A.L.R.4th 1054 (1980) (collecting cases). The modern trend departs from the traditional rule by finding that intangible invasions of the plaintiff's property may constitute a trespass. However, the modern trend also departs from traditional trespass rules by refusing to infer damage as a matter of law, thereby eliminating the right to nominal damages. The plaintiff claiming trespass must prove that the intangible invasion resulted in substantial damages to the plaintiff's land.

The leading case in the modern trend is the decision of the Alabama Supreme Court in *Borland,* 369 So.2d at 523. In that case, the plaintiffs brought a trespass action alleging that the defendant's smelting operations caused an intrusion of lead particulates and sulfoxide gases onto the plaintiff's property. The trial court's dismissal

of the action was reversed on appeal, the Alabama Supreme Court finding that:

> Under the modern theory of trespass, the law presently allows an action to be maintained in trespass for invasions that, at one time, were considered indirect and, hence, only a nuisance. In order to recover in trespass for this type of invasion [i.e., the asphalt piled in such a way as to run onto plaintiff's property, or the pollution emitting from a defendant's smoke stack, such as in the present case], a plaintiff must show 1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and 4) substantial damages to the *res*.

*Borland*, 369 So.2d at 529 (brackets in original).

The court stressed the distinction between the law of trespass, which protects the plaintiff's exclusive possessory interest in property, and the law of nuisance, which protects the right to use and enjoy property. In cases involving a direct or tangible invasion of the plaintiff's property, there is necessarily an infringement of the right to exclusive possession, and the law presumes damages. But in cases of indirect invasion—the "classic cases of the barking dog, the neighboring bawdy house, noise, smoke, fumes, or obnoxious odors" which cause mere discomfort and annoyance—the plaintiff's remedy is an action for nuisance based upon an interference with his right to use and enjoy his property. *Id.* Only if the indirect and intangible invasion causes substantial damage to the plaintiff's property, thereby infringing his exclusive possessory interest in the property, will an action for trespass lie.

The Washington Supreme Court reached the same conclusion in *Bradley*, 709 P.2d at 782. Addressing a question certified to it by the United States District Court for the Western District of Washington, the state Supreme Court held that invasions of intangible airborne particles can constitute a nuisance, but not a trespass, if the contaminants dissipate and do not remain on the property.

> While at common law any trespass entitled a land owner to recover nominal or punitive damages for the invasion of his property, such a rule is not appropriate under the circumstances before us. No useful purpose would be served by sanctioning actions in trespass by every land owner within a hundred miles of a manufacturing plant. Manufacturers would be harassed and a litigious few would cause the escalation of costs to the detriment of the many. [T]he plaintiff who cannot show that actual and substantial damages have been suffered should be subject to dismissal of his cause upon a motion for summary judgment.

709 P.2d at 791.

Applying this decision in subsequent proceedings in the same case, the United States District Court for the Western District of Washington held that the plaintiffs were entitled to recover for trespass only if there has been damage which directly interferes with the plaintiffs' possessory interest in the property. Evidence of a general diminution of the value of the property was insufficient, the court held, since "this sort of evidence can serve only to quantify the magnitude of injury otherwise proven." *Bradley v. American Smelting & Refining Co.*, 635 F.Supp. 1154, 1157 (W.D. Wash.1986). Because the plaintiffs were unable to demonstrate any direct injury to their property, the district court rejected the trespass portion of the plaintiffs' claim for relief.

No Kansas case has directly addressed the subject. However, the pattern of the developing case law in other jurisdictions is clear and consistent, and the court will adopt the modern view recognized in *Borland* and *Bradley*. The Maddys make no allegation of a direct and tangible invasion of their property, relying entirely upon the alleged emission and migration of airborne gases. As a result, the plaintiffs cannot demonstrate a direct trespass entitling them to recovery without proof of actual and substantial damage.

Yet the Maddys also fail to present either allegation or proof of actual damages in the form of an injury to their property. At most, they have merely alleged a general diminution in the value of the property. Thus, even under the modern rule adopted in *Borland* and *Bradley*, the Maddys cannot recover in trespass since they have failed to demonstrate an injury implicating their right to exclusive possession.

*Comparative Fault*

The remaining motion for summary judgment is the motion originally filed by the Fahnholz plaintiffs on February 2, 1989. This motion seeks summary judgment on Vulcan's affirmative defense of comparative fault. The brief filed in support of the motion by the Fahnholz plaintiffs argues that the Kansas comparative negligence statute, K.S.A. 60–258a, is not applicable to the forms of action asserted in the present case. The Maddys, adopting by reference the arguments advanced by the Fahnholz plaintiffs, have joined in the motion.

Of course, much of the force of the present motion is now moot. A portion of Vulcan's comparative fault defense centers on alleged unhealthful lifestyle practices, such as smoking, among the plaintiffs. This argument and the evidence supporting it relates only to the personal injury claims asserted by the plaintiffs, claims which (as discussed above) must be dismissed for lack of evidence.

In the remaining portion of its comparative fault defense, Vulcan asserts that the toxic chemicals complained of by the plaintiffs were not emitted by Vulcan but by other manufacturers in the area. This portion of the defense may be relevant to the remaining claim for relief—whether airborne pollution from other sources in the area caused a decline in value of the plaintiffs' property. It will thus be necessary to determine whether, as the Fahnholz plaintiffs asserted in their brief, comparative fault is inapplicable to the remaining forms of action asserted by the Maddys: nuisance and absolute liability for participation in ultrahazardous activity.

■■■ With regard to absolute liability for an ultrahazardous activity, Kansas has expressly adopted the doctrine as identified in the RESTATEMENT (SECOND) OF TORTS §§ 519, 520. *Williams v. Amoco Production Co.*, 241 Kan. 102, 734 P.2d 1113 (1987). However, the state court has never explicitly discussed whether comparative fault is a permissible defense in such actions.

In *Johnston v. United States*, 597 F.Supp. 374 (D.Kan.1984), this court expressly indicated that the comparative fault principles of K.S.A. 60–258a were applicable in cases involving ultrahazardous activities. The plaintiffs in *Johnston*, employees of an aircraft instrument plant, brought suit against the manufacturers and suppliers of luminous aircraft instrument dials. The plaintiffs contended that their exposure to the radioactive dials caused them severe injuries in the form of cancer and leukemia. This court noted that the case included claims for absolute liability based on participation in a highly dangerous activity, following *Rylands v. Fletcher*, L.R. 3 H.L. 330 (1868), and for absolute liability for abnormally dangerous activity under RESTATEMENT (SECOND) OF TORTS § 519 (1979). Under either approach, the court stated that "inasmuch as the plaintiffs' claim asserts a fault concept at the hands of others, it should as a consequence be weighed pursuant to the comparative fault principles of Kansas (K.S.A. 60–258a)." 597 F.Supp. at 376.

The Uniform Comparative Fault Act has taken the same viewpoint. In their comments to the Act, the authors state:

Strict liability for both abnormally dangerous activities and for products bears a strong similarity to negligence as a matter of law (negligence per se), and the factfinder should have no real difficulty in setting percentages of fault. Putting out a product that is dangerous to the user or the public or engaging in an activity that is dangerous to those in the vicinity involves a measure of fault that can be weighed and compared, even though it is not characterized as negligence.

Unif.Comp. Fault Act § 1, comment (a). The Kansas Supreme Court has applied the

comparative fault principles of K.S.A. 60–258a in cases involving both negligence per se, *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, 610 P.2d 1107 (1980), and strict liability for products, *Albertson v. Volkswagenwerk Aktiengesellschaft*, 230 Kan. 368, 634 P.2d 1127 (1981).

With regard to the plaintiffs' claims for nuisance, Vulcan essentially concedes that comparative fault is not, in itself, a valid affirmative defense to such claims. *See Sandifer Motors, Inc. v. City of Roeland Park*, 6 Kan.App.2d 308, 628 P.2d 239 (1931). Vulcan argues, however, that evidence of fault on the part of others is still relevant as to causation, citing *Cherry v. Board of County Com'rs of Crawford County*, 202 Kan. 121, 446 P.2d 734 (1968). Yet, as Vulcan recognizes, the discussion of the admissibility of evidence relating to the fault of other parties is better reserved for motions in limine prior to trial.

IT IS ACCORDINGLY ORDERED this 25th day of May, 1990, that the defendant's motions for summary judgment on physical injuries and emotional distress are hereby granted. The defendant's motion for summary judgment on trespass by airborne contaminants is also granted. The plaintiffs' motion for summary judgment on comparative fault is granted as to their claims for nuisance, but denied in all other respects.